# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

FILED
IN CLERKS OFFICE

2007 MAY 31  P 12: 21

**JEFFREY R. SMITH,**                    )
      **Plaintiff**                    )    **CIVIL ACTION NO.: 07-**
                          )                        U.S. DISTRICT COURT
      **v.**                           )                        DISTRICT OF MASS.
                          )
**EMERALD PARTNERSHIP, LTD.**           )
      **Defendant**                    )

## COMPLAINT

This is an action seeking injunctive, declaratory and equitable relief pursuant to Title III

of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq*. The plaintiff, Jeffrey R. Smith

brings this cause against Emerald Partnership, Ltd. ("EPL") and alleges as follows:

## PARTIES

1.      The plaintiff, Jeffrey R. Smith, age 26, resides at 3040 Cranberry Highway, Unit 45, East

Wareham, MA 02558. Mr. Smith relies completely upon an electric wheelchair for ambulation.

He suffered a brain injury in a car accident on March 23, 1997 when he was sixteen years of age.

2.      Mr. Smith is a qualified individual with disabilities within the meaning of all applicable

statutes including the ADA.

3.      The defendant, EPL, is a Massachusetts corporation with a usual place of business at 35

Monica Street, North Attleboro, Massachusetts 02763.

4.      Since December 2, 1999, EPL has owned and operated a 151 room hotel known as Days

Inn New Bedford, 500 Hathaway Road, New Bedford, Massachusetts 02740.

5.      Days Inn New Bedford is a place of public accommodation subject to the requirements of

the Title III of the ADA.

6.      The defendant, EPL, is a private entity that operates a public accommodation as defined

in Title III of the ADA, 42 U.S.C. § 12181(7)(E).

**SYNOPSIS OF A CAUSE OF ACTION UNDER THE ADA**

7.     Congress enacted the ADA in 1990 to remedy widespread discrimination against disabled

individuals. In studying the need for such legislation, Congress found that "historically, society

has tended to isolate and segregate individuals with disabilities, and, despite some

improvements, such forms of discrimination against individuals with disabilities continue to be a

serious and pervasive social problem." 42 U.S.C. § 12101(a)(2).

8.     Congress found that the many forms such discrimination takes include "outright

intentional exclusion" as well as the "failure to make modifications to existing facilities and

practices." 42 U.S.C. § 12101(a)(5).

9.     After thoroughly investigating the problem, Congress concluded that there was a

"compelling need" for a "clear and comprehensive national mandate" to eliminate discrimination

against disabled individuals, and to integrate them "into the economic and social mainstream of

American life." S. Rep. No. 101-116, p. 20 (1989); H. R. Rep. No. 101-485, pt. 2, p. 50 (1990).

10.    In signing the ADA into law on July 26, 1990, President George H.W. Bush stated:

"Last year, we celebrated a victory of international freedom. Even the strongest person
couldn't scale the Berlin Wall to gain the elusive promise of independence that lay just
beyond. And so, together we rejoiced when that barrier fell. And now I sign legislation
which takes a sledgehammer to another wall, one which has for too many generations
separated Americans with disabilities from the freedom they could glimpse, but not
grasp. Once again, we rejoice as this barrier falls for claiming together we will not
accept, we will not excuse, we will not tolerate discrimination in America."

11.    The ADA provides, "No individual shall be discriminated against on the basis of

disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages,

or accommodations of any place of public accommodation by any person who owns, leases (or

leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

2

12.     In order to make a prima facie case under Title III of the ADA, a plaintiff must prove that
(1) he has a disability, (2) defendant's facility is a place of public accommodation, (3) and he
was denied full and equal treatment because of his disability.

13.     The ADA's public accommodations provisions also permit an individual to allege
discrimination based on a reasonable belief that discrimination is about to occur.

14.     A plaintiff with a disability need not engage in the "futile gesture" of attempting to gain
access to each and every feature of a facility or place of public accommodation where access
barriers are known to exist and where the owner or operator does not intend to comply with the
provisions of the ADA. 42 U.S.C. § 12188(a)(1).

15.     This case arises out of the defendant's unlawful practice of denying meaningful and equal
access to the facilities, goods and services offered at Days Inn New Bedford to persons with
disabilities, such as the plaintiff, Jeffrey R. Smith.

## JURISDICTION AND VENUE

16.     The Court has primary jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and §
1343 in that this action arises under the laws of the United States and the defendant is subject to
personal jurisdiction.

17.     Venue is proper in this Court under 28 U.S.C. § 1391, the claim having arisen in the
District of Massachusetts.

## COUNT I - VIOLATION OF THE AMERICANS WITH DISABILITIES ACT

18.     On May 16, 2007, Mr. Smith wished to stay overnight as a guest at Days Inn New
Bedford; he was denied meaningful and equal access to the facilities, goods and services of Days
Inn New Bedford due to its lack of accessibility and a lack of compliance with the ADA's

3

of compliance with the ADA's requirements regarding the removal of architectural barriers to access by persons with disabilities.

19.    Mr. Smith was scheduled to appear on May 17, 2007 as a guest speaker at an event at New Bedford High School in New Bedford sponsored by the Brain Injury Association of Massachusetts.

20.    Mr. Smith wanted to stay overnight in New Bedford before his scheduled appearance on May 17, 2007.  He wanted to avoid having to travel in the morning.

21.    On May 15, 2007, Mr. Smith's companion went inside Days Inn New Bedford to inquire about reserving a room.  Mr. Smith waited in the van because there were no curb cuts between the parking lot and the main entrance.

22.    On May 15, 2007, the guest registration clerk told Mr. Smith's companion that the cost of a room would be $90.00 for the evening, but that there were no wheelchair accessible rooms in the hotel.

23.    The hotel's web site at

http://www.daysinn.com/DaysInn/control/Booking/property_info?propertyId=06777&brandInfo =DI falsely advertises that the hotel has "Handicapped Rooms."

24.    Even if Mr. Smith had been able to go from the parking lot to the curb and then inside the hotel, he would have found that there was 36" high segment of the counter at the registration desk.

25.    Mr. Smith wishes to patronize Days Inn New Bedford in the future as any other paying guest; he reasonably expects that he will return to the Days Inn New Bedford, but he continues to be denied meaningful access to the hotel due to the architectural barriers to wheelchair access that continue to exist there.

4

26.    The defendant has discriminated against the plaintiff and continues to discriminate against the plaintiff by denying him access to, and full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of Days Inn New Bedford as prohibited by 42 U.S.C. § 12182(b)(2)(A)(iv) and by failing to make alterations in such a manner that, to the maximum extent feasible, the altered portions of the facility are readily accessible as required by 42 U.S.C. § 12183(a)(2).

27.    Pursuant to the mandates of 42 U.S.C. § 12134(a), on July 26, 1991, the Department of Justice, Office of the Attorney General, promulgated federal regulations to implement the requirements of the ADA. The regulations are codified at 28 C.F.R. Part 36. The regulations are known as the "ADAAG's" or the "Americans with Disabilities Act Accessibility Guidelines."

28.    With respect to altered facilities under the ADA, discrimination constitutes "a failure to make alterations in such manner that, to maximum extent feasible, the altered portions of the facility are readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs." 42 U.S.C. § 12183(a)(2).

29.    All alterations that could affect the usability of a facility must be made in an accessible manner to the maximum extent feasible. For example, if during renovations a doorway is being relocated, the new doorway must be wide enough to meet the new construction standard for accessibility. When alterations are made to a primary function area, an accessible path of travel to the altered area must also be provided. The bathrooms, telephones, and counters serving that area must also be made accessible. These additional accessibility alterations are required to the extent that the added accessibility costs do not exceed 20% of the cost of the original alteration.

5

30.     On information and belief, Days Inn New Bedford has undergone renovations since January 26, 1992 such that including accessible features was mandatory, but EPL did not include accessibility features in its renovations.

31.     Even if Days Inn New Bedford never was an altered facility within the meaning of the ADA, the defendant is required to remove architectural barriers to wheelchair access to the extent that such modifications would be "readily achievable."

32.     42 U.S.C. § 12182(2)(A)(iv) provides that "discrimination" under the ADA includes "a failure to remove architectural barriers, and communication barriers that are structural in nature, in existing facilities . . . where such removal is readily achievable."

33.     Under 42 USC § 12181(9) the term "readily achievable" means "easily accomplishable and able to be carried out without much difficulty or expense."

34.     The "readily achievable" requirement is based on the size and resources of the business. Larger businesses with more resources are expected to take a more active role in removing barriers than small businesses.

35.     The ADA also recognizes that economic conditions vary. When a business has resources to remove barriers, it is expected to do so; but when profits are down, barrier removal may be reduced or delayed.

36.     Barrier removal is an ongoing obligation. A business is expected to remove barriers as resources become available.

37.     Despite having available resources, EPL has not set aside funds to remove architectural barriers at Days Inn New Bedford on an ongoing basis since the enactment of the ADA.

38.     Mr. Smith intends to return to Days Inn New Bedford as soon as the architectural barriers to wheelchair access are removed, possibly sooner. The hotel is located in close proximity to

6

many local attractions that Mr. Smith is interested in visiting such as the Whaling Museum and Whaling National Historical Park, Candle Works, University of Massachusetts Dartmouth and many more.

39.     Mr. Smith would like to enter Days Inn New Bedford, but he does not wish to engage in the futile gesture of trying to do so and of attempting to gain access to each and every feature of it because he knows that barriers to wheelchair access exist there and the defendant has not and does not intend to remove architectural barriers to access there.

40.     Mr. Smith has suffered an injury in fact as a result of the defendant's non-compliance with the ADA. His desire to return to the hotel creates a real and immediate threat of future injury.

41.     The injunctive relief requested below will redress Mr. Smith's injury.

42.     Upon arriving at Days Inn New Bedford on May 16, 2007, Mr. Theodore observed that the parking area had inadequate spaces designated for disabled use (in violation of Sections 4.1.2 and 4.6.1 of the ADAAG).

43.     He observed that there is no accessible route from the parking area into the facility (in violation of Sections 4.3.2, 4.6.2 and 4.6.3 of the ADAAG).

44.     On information and belief, the doors at the building entrance are fitted with inaccessible hardware in violation of Section 4.13.9 of the ADAAG.

45.     The registration desk lacks a lowered portion 36" wide and 36" from the floor.

46.     EPL has failed to remove barriers to access by persons with mobility disabilities at the hotel where such barrier removal is readily achievable.

47.     EPL has failed to modify policies and procedures at Days Inn New Bedford where required to ensure equal access for persons with disabilities.

7

48.     On information and belief, Mr. Smith alleges that there are other ADAAG violations

present within the hotel that will be more fully alleged upon discovery and further inspection.

49.     The defendant has not complied with accessibility standards to the maximum feasible.

50.     By maintaining such barriers, EPL failed to comply with ADA and access requirements

for areas of new construction or alteration.

51.     The actions and initiatives that EPL has failed to undertake in order to make its hotel

accessible to persons with disabilities are actions and initiatives that would be readily achievable,

required by law, and would greatly assist persons with mobility disabilities at minimal expense

to the defendant.

52.     The defendant's conduct constitutes ongoing and continuous violations of the ADA and,

unless restrained from doing so, the defendant will continue to violate the ADA. Said conduct,

unless enjoined, will continue to inflict injuries for which the plaintiff has no adequate remedy at

law.

        WHEREFORE, The plaintiff requests that the Court will order the defendant to alter

Days Inn New Bedford to make it readily accessible to and useable by individuals with

disabilities to the extent required by the Americans with Disabilities Act and Subpart E of 28

C.F.R. Part 36 and award the plaintiffs appropriate attorneys' fees and costs of this suit as

provided by 42 U.S.C. § 12205.

                                        Respectfully submitted,
                                        The Plaintiff, JEFFREY R. SMITH,

                                        By his Attorneys,

                                        Nicholas S. Guerrera, BBO#551475
                                        Shaheen Guerrera & O'Leary, LLC
                                        Jefferson Office Park

8

820A Turnpike Street
North Andover, MA 01845
(978) 689-0800

/s/ Edward N. Garno
Edward N. Garno, BBO#564378
592 Essex Street
Lawrence, MA 01840
(978) 687-7805

Dated: May 29, 2006